CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Appellant,

v.

Kathern Lee TOMMIE and Edith Jones, Appellees.

No. 8871.

Court of Civil Appeals of Texas, Texarkana.

May 15, 1981.

Rehearing Denied June 9, 1981.

Thomas G. Nash, Jr., Dallas, for appellant.

Logan Ford, Dallas, Woodrow F. Eason, Waco, for appellees.

CORNELIUS, Chief Justice.

This is a suit upon a group insurance policy to recover accidental death benefits. Jerry Lee Tommie was insured under a Connecticut General group policy covering the employees of Texas Instruments, Inc. Kathern Lee Tommie and Edith Jones, Jerry's wife and mother respectively, were named joint beneficiaries, and upon his death they demanded the $120,000.00 accidental death benefit provided by the policy. The insurer refused to pay on the grounds that Mr. Tommie's death was not an accident and further was the result of either self-inflicted injury or disease.

The insurance policy provided that accidental death benefits would be payable if the insured "... has received an accidental bodily injury, and as a result of the injury, directly and independently of all other causes, has suffered ... Loss of Life." The policy specifically excludes from coverage any loss which results directly or indirectly from "... suicide or intentionally self-inflicted injury, ..." and infection or disease.

The circumstances surrounding Mr. Tommie's death were as follows: While Mrs. Tommie was out of the house shopping for groceries, Mr. Tommie dressed himself in her wig, bra, nightie and panties. He went into a bedroom and placed the end of a nylon exercise rope in a noose around his neck. He placed a pad around his neck under the rope. Standing with his back to the door he ran the other end of the rope over the top of the door and down the opposite side of the door around the outside doorknob, and then tied that end around his left foot. The exercise rope was equipped with pulleys so that with his left foot he could increase or decrease the pressure of the rope around his neck. The purpose of the preparations made by Mr. Tommie, according to the medical testimony, was to

heighten sexual pleasure during masturbation by reducing the supply of blood, and therefore the supply of oxygen, to the brain by gradually tightening the rope around his neck. The reduced oxygen to the brain produces a state of hypercapnia, or an increase of carbon dioxide in the blood, and a state of hypoxia, or a decrease in oxygen in the blood, which is supposed to increase the intensity of orgasm. When Mrs. Tommie returned she went to the bedroom and found the exercise rope looped over the top of the door and around the doorknob. The door was open about 2½ to 3 inches. She could not push the door open so she got a kitchen knife and cut the rope. At that time she heard her husband's foot hit the floor. She called the police and they found him dead with the rope tight around his neck. The medical testimony was that Mr. Tommie had died from anoxic brain damage secondary to the ligature around his neck. From the position of the body and the other circumstances, it appeared that Mr. Tommie had blacked out or had otherwise lost his balance and fallen, placing the full weight of his 200 pound body on the rope around his neck.

The jury found that Mr. Tommie's death was an accident and was not the result of either an intentionally self-inflicted injury or disease, and the trial court rendered judgment accordingly. Connecticut General contends by its first four points of error that there is no evidence or insufficient evidence that Mr. Tommie's death was the result of an accident independent of all other causes, and that the jury's finding of accidental death is against the great weight and preponderance of the evidence.

In *Freeman v. Crown Life Ins. Co.*, 580 S.W.2d 897 (Tex.Civ.App.—Texarkana 1979, writ ref'd n. r. e.), this Court analyzed and summarized the many decisions concerning death arising from dangerous or negligent activities and concluded that:

"... The mere fact that a person's death may have occurred because of his negligence, even gross negligence, does not prevent that death from being an accident within the meaning of an accident

insurance policy. It is only when the consequences of the act are so natural and probable as to be expected by any reasonable person that it can be said that the victim, in effect, intended the result and it was therefore not accidental.... More is required than a simple showing that the insured could have reasonably foreseen that injury or death might result. As Justice Doughty said in *Republic Nat. Life Ins. Co. v. Heyward*, supra, the insured must have acted in such a way that he should have reasonably *known* his actions would *probably result in his death....*"

The beneficiaries here had the burden to establish that Mr. Tommie's death was due to an accident. Their evidence revealed that his death was by violent and external means, thus raising a presumption that the death was accidental. *Republic Nat. Life Ins. Co. v. Heyward*, 536 S.W.2d 549 (Tex. 1976); *International Travelers Association v. Marshall*, 131 Tex. 258, 114 S.W.2d 851 (1938); *Freeman v. Crown Life Ins. Co.*, supra. They also produced other evidence that the death was an accident when tested by the rules announced in *Freeman*. Dr. Norton testified that she encountered from time to time in her medical practice the same type of auto-erotic activity as Mr. Tommie was engaged in, and that while some forty deaths per year were reported in the United States as a result of such activity, death is not the normal expected result of that behavior, but would be considered unusual or unexpected. Dr. Montgomery also agreed that death in those circumstances would not be reasonably expected. Dr. Norton further testified that it was likely that Mr. Tommie had engaged in the practice for several years, considering his age and the fact that such behavior generally begins in young men during pubescence or shortly thereafter. From that testimony and all the other evidence, it can reasonably be concluded that, although the type of activity in which Mr. Tommie was engaged was foolish and fraught with substantial risk of injury or death, it was not of such a nature that the insured should have reasonably known that it would probably result in

his death. The finding of the jury that the death was accidental was supported by sufficient evidence and was not so against the great weight of the evidence as to be manifestly wrong.

The appeal also urges that there was no evidence that Mr. Tommie's death was not caused by an intentionally self-inflicted injury, and therefore the beneficiaries failed to carry their burden to show that the death was not caused by one of the policy's excluded risks. See *Sherman v. Provident American Insurance Company*, 421 S.W.2d 652 (Tex.1967). The jury found that the death was not the result of a self-inflicted injury. If there is any probative evidence to support that finding, we must uphold the verdict in that respect.

The evidence reveals that Mr. Tommie put a rope around his neck with the intent to tighten it to a degree necessary to reduce the amount of oxygen to the brain. Connecticut General argues that this conclusively shows that Mr. Tommie intentionally injured himself, and that it was only the extent of the injury that was unintentional.

■ The term injury is not defined in the policy. In that situation it must be given the usual and normal meaning which would be ascribed to it by ordinary persons. *Republic Nat. Life Ins. Co. v. Heyward*, supra; *Freeman v. Crown Life Ins. Co.*, supra. Inasmuch as Mr. Tommie placed a pad between the rope and his neck and there is no evidence that the rope inflicted any external injury to his body, we must determine from the record if a reduction of the supply of oxygen to the brain in order to produce a state of hypercapnia is an injury within the normal and usual meaning of that term.

■ There is abundant evidence that Mr. Tommie, aside from his propensity to unusual sexual practices, was a well-adjusted, happy individual who was looking forward to the future, and that he did not intend to commit suicide. There is also evidence that a state of hypercapnia simply alters the amount of oxygen in the brain, thus heightening or intensifying certain body sensations, and that it may be accomplished by various drugs as well as by other means.

We believe this evidence and the reasonable inferences which may be drawn therefrom constitute some probative evidence that Mr. Tommie did not intentionally inflict upon himself bodily injury in the normal and usual meaning of that term, and that the jury finding must be upheld.

■ There was also sufficient evidence that the death was not caused by disease. The medical testimony was that Mr. Tommie had transvestite tendencies and that his sexual practices and fantasies were unusual, but that they were not such as would constitute a disease in either the medical or the ordinary sense of the word.

■ The remainder of Connecticut General's points of error challenge the trial court's admission of certain testimony and opinion evidence. Complaint is made of the admission of Dr. Norton's and Dr. Montgomery's testimony that the death was accidental, unexpected, unusual and unintentional. It is asserted that such testimony was inadmissible because it constitutes opinions based on speculation, because the proper predicate was not laid, because the opinions were based upon hearsay, because they are opinions as to ultimate facts and invade the province of the jury, and because they are opinions on mixed questions of law and fact and are not the proper subjects for expert opinion. We cannot agree. The medical opinions were elicited by questions which asked the doctors to state their opinions based upon "reasonable medical probabilities", and thus were not inadmissible because they were based upon mere speculation. See *Insurance Company of North America v. Myers*, 411 S.W.2d 710 (Tex. 1966). Neither were they inadmissible because they were partly based upon hearsay. Dr. Norton's testimony was based in part on information recorded by field agents who investigated the circumstances surrounding the death. She also testified that the use of information gathered by field agents is a customary practice. Such testimony is admissible when based in part upon reports of others which the expert customarily relies upon in the practice of his profession. The

only restriction is that the expert's opinion may not be based solely upon the statements of others unless those statements are properly in evidence and the opinion is sought through hypothetical questions. See *Moore v. Grantham*, 599 S.W.2d 287 (Tex. 1980); *Slaughter v. Abilene State School*, 561 S.W.2d 789 (Tex.1977); *Lewis v. Southmore Savings Association*, 480 S.W.2d 180 (Tex.1972). In this case Dr. Norton's testimony was based partly on her personal observation as the doctor performing the autopsy, as well as her experience in dealing with sexual aberrations such as were involved in this case, and Dr. Montgomery's testimony was in response to hypothetical questions.

■ Arguments that expert opinions are inadmissible because they invade the province of the jury and that they are opinions as to ultimate facts have been characterized as unsound. 2 Ray, Texas Evidence § 1395, p. 6 (3d ed. 1980). Such opinions will be received whenever they are given by witnesses competent to do so and if they are likely to be of appreciable aid to the jury in arriving at correct conclusions. See *Federal Underwriters Exchange v. Cost*, 132 Tex. 299, 123 S.W.2d 332 (1938); *White v. State*, 306 S.W.2d 903 (Tex.Cr.App.1957), *cert. denied*, 355 U.S. 936, 78 S.Ct. 420, 2 L.Ed.2d 419 (1958); *Bounds v. Caudle*, 549 S.W.2d 438 (Tex.Civ.App.—Corpus Christi 1977), *rev'd on other grounds*, 560 S.W.2d 925 (Tex.1977).

■ It is also urged that the opinions were inadmissible because they concerned mixed questions of law and fact which are not proper subjects for expert opinion. Of course, the opinions as to the cause of death were properly admitted, as it is well settled that expert testimony is admissible to establish the cause of death or injury. *Insurance Company of North America v. Myers*, supra; *Hart v. Van Zandt*, 399 S.W.2d 791 (Tex.1965); *Neely v. State*, 409 S.W.2d 552 (Tex.Cr.App.1966); 2 Ray, Texas Evidence § 1427, p. 78 (3d ed. 1980). In this case, the questions of accidental and self-inflicted injury are to be determined according to the normal and usual meaning ascribed to those

terms by ordinary persons, and it would seem that any witness familiar with the cause, purpose and experiential history of the type of conduct engaged in by the insured here would be competent to testify as to whether death in such circumstances would be considered accidental or due to intentional self-inflicted injury according to the usual and ordinary meaning of those terms. This would be particularly true for medical doctors who have studied and evaluated the type of activity involved. If it can be said that the opinions overstep the bounds of propriety, we find their admission to be harmless in view of the other cumulative evidence in the record.

All of Connecticut General's points of error have been carefully considered and are respectfully overruled. It is not necessary for us to rule on the beneficiaries' cross-points.

The judgment of the trial court is affirmed.