**Julia Brumfield SIMS**

v.

**MONUMENTAL GENERAL LIFE INSURANCE COMPANY.**

Civ. A. No. 90–2645.

United States District Court, E.D. Louisiana.

Nov. 8, 1991.

Joseph Arthur Sims, Jr., Hammond, La., for plaintiff.

Covert J. Geary and Virginia Weichert Gundlach, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant.

WICKER, District Judge.

The matter is before the Court cross-motions for summary judgment filed on behalf of plaintiff, Julia Brumfield Sims, and defendant, Monumental General Life Insurance Company ("Monumental"). By way of these motions, the Court has been asked to determine whether or not plaintiff, as beneficiary, can recover $150,000.00 in accidental death benefits under an Accidental Death and Dismemberment group insurance policy ("the Policy") issued by the defendant. The named insured under the Policy was the plaintiff's brother, William P. Brumfield.

After considering the briefs of counsel and the applicable law, the Court GRANTS the defendant's motion for summary judgment and DENIES the plaintiff's motion for summary judgment, for the reasons which follow:

The following facts are deemed undisputed for purposes of these motions:

(1) The insured, William P. Brumfield, obtained Group Voluntary Accidental Death and Dismemberment Insurance from

Monumental, Policy No. GZ08–181, Certificate No. 14752, under which Mr. Brumfield was covered by $150,000.00 in accidental death insurance.

(2) Coverage was assumed by Monumental on June 1, 1984 under Policy No. MZ08–181, with all terms and conditions of the Policy remaining the same.

(3) Mr. Brumfield died late at night, apparently on July 24, 1989, at his home in Baton Rouge, Louisiana. He was discovered on July 26, 1989 with a rope around his neck, suspended over an iron pipe in a closet in his study, which rope was connected to an elaborate pulley system.

(4) Mr. Brumfield was discovered hanging in the den closet wearing only red undershorts. There was a large wall mirror standing on the floor against the desk approximately eight feet in front of the opened closet door where Mr. Brumfield was hanging.

(5) The pipe had old rope burn marks on the top where the rope was suspended from it. In the closet was a bag which contained the remaining part of the rope that the victim was hung with, which also had black burn marks matching the old marks on the top pipe in the closet.

(6) Mr. Brumfield was involved in an act that restricted oxygen to his brain, apparently for his own personal enjoyment.

(7) Mr. Brumfield died as a result of autoerotic asphyxiation.[1]

(8) Mr. Brumfield's death was neither the result of suicide, foul play or natural causes.

(9) The Policy provides that coverage is only for death resulting from an "accidental bodily injury," which occurs independently of any other cause.[2]

(10) The Policy provides that accidental death benefits are not payable for "any loss resulting directly or indirectly, wholly or partly from ... [an] intentionally self-inflicted injury.[3]

Plaintiff filed this lawsuit after Monumental denied coverage on the grounds that the Policy excluded payments in this instance because Mr. Brumfield's death could not be classified as "accidental" and because the insured's death was a result of an intentionally self-inflicted injury.

Courts have reached different conclusions on the issue of whether a death by autoerotic asphyxiation can be deemed accidental.[4] However under the facts and par-

---

1. In *Sigler v. Mutual Benefit Life Insurance Co.,* 506 F.Supp. 542, 543 (S.D.Iowa), *aff'd,* 663 F.2d 49 (8th Cir.1981), the Court described the autoerotic practice as follows: "The autoerotic practice involves the participant 'hanging' himself by the neck, creating an asphyxial state, in an attempt to stimulate nerve centers in the brain and heighten the masturbation experience." Reduction of the oxygen flow to the brain has been known to heighten sexual stimulation.

2. The relevant portions of the insurance agreement provide:
   A. BENEFITS
   AI. Upon receipt of due proof that the Covered Person has an accident while insured under the group policy for Group Voluntary Accidental Death and Dismemberment Benefits, and such Covered Person either dies or sustains loss of limb or sight, the Insurer will, subject to all the terms of the group policy, pay to the Covered Person if living, otherwise to his beneficiary, the insurance benefit for which he was insured for on the date of the accident, as specified in the Table of Losses and Benefits based upon the principal sum specified in the Schedule of Benefits, provided:

(i) The loss occurs as the direct result of an accidental bodily injury evidenced by a visible contusion or wound on the exterior of the body (except in the case of drowning or an internal injury, which is revealed by an autopsy).

\* \* \* \* \* \*

(iii) The loss occurs as specified in (i) above and independently of any other cause.

3. The policy provided in pertinent part:
   LIMITATIONS
   Group Voluntary Accidental Death and Dismemberment Benefits are not payable for any loss resulting directly or indirectly, wholly or partly from:
   1. Suicide or attempt thereat or intentionally self-inflicted injury occurring while sane or insane (in Missouri while sane); ...

4. Compare *Kennedy v. Washington Nat'l Ins. Co.,* 136 Wis.2d 425, 401 N.W.2d 842 (Ct.App. 1987) [The Wisconsin state appellate court affirmed the trial court's summary judgment decision that death by autoerotic asphyxiation was accidental.] and *Connecticut General Life Ins. Co. v. Tommie,* 619 S.W.2d 199 (Tex.Civ.App. 1981) [The appellate court affirmed a jury's de-

ticular policy language of this case, this Court need not decide that issue. Even assuming *arguendo* that the Court would find that Mr. Brumfield's death was accidental, the Policy exclusion for "intentionally self-inflicted injury" bars coverage.

The plaintiff suggests that Mr. Brumfield's death, and whether he intended that death, should be the focal point of the Court's inquiry, since death was ultimately the consequence of Mr. Brumfield's willful participation in the practice of autoerotic asphyxiation. However the Policy exclusion reads: "suicide or attempt thereat *or* intentionally self-inflicted injury." Were death considered an intentionally self-inflicted injury, then the word "suicide or attempt thereat" would be redundant and mere surplusage. Furthermore, all parties agree that Mr. Brumfield's death was not the result of suicide. He apparently had engaged in the practice of autoerotic asphyxiation on other occasions and clearly did not intend to die. Mr. Brumfield's death then is not the "injury." Rather it is only the basis of the loss claimed under the Policy. The Court then must decide what injury, if any, "directly or indirectly", "wholly or partly" led to this loss and whether that injury was "intentionally self-inflicted" so as to be excluded from coverage under the Policy.

The Louisiana insurance cases on intentional injury concern insureds who injure another and are distinguishable both by their facts and by the policy language at issue. See generally *Breland v. Schilling*, 550 So.2d 609, 611 (La.1989); *Menard v. Zeno*, 558 So.2d 744 (La.App. 3rd Cir.1990). However, other jurisdictions have considered whether an accidental death policy exclusion for "intentionally self-inflicted injury" (as opposed to an exclusion for suicide) was invoked by an insured's death that resulted from autoerotic asphyxiation.

In *Sigler v. Mutual Benefit Life Ins. Co.*, 506 F.Supp. 542 (S.D.Iowa), *aff'd*, 663 F.2d 49 (8th Cir.1981), the Court addressed cross motions for summary judgment on the issues of whether the plaintiff therein, the widow of the deceased insured, could recover the proceeds of a $50,000.00 accidental death group insurance plan under which her husband was covered, and whether the plaintiff was entitled to actual and punitive damages because of the defendant insurance company's denial of her claim under the policy. The policy at issue in *Sigler* excluded from coverage an "intentionally self inflicted injury of any kind." *Id.* at 543–44. In reaching its conclusion that recovery was barred under the policy, *inter alia*, in light of the exclusionary language of the policy, the Court stated:

> Even if [the insured's] death was found to be accidental within the meaning of the policy, recovery would be barred by the clause excluding from coverage an "intentionally, self-inflicted injury of any kind." Although [the insured] did not intend to produce the unconsciousness that resulted in his death, his voluntary acts were intended to temporarily restrict his air supply to heighten the sensations of masturbation. Therefore, the elements of "intentionally, self-inflicted" are satisfied. The only question remaining is whether self-inflicted hanging is an "injury of any kind." The Court believes that it is. If someone else had placed [the insured] in the same position as he placed himself to temporarily restrict his ability to breathe, it would have been an injury. In the Court's opinion, it continues to be an injury even when it is self-inflicted.

*Id.* at 545.

The holding of the *Sigler* court differs from that of the Texas appellate court in

cision under Texas law that the insured's death as the result of an autoerotic practice was accidental for purposes of coverage under the accidental death policy.] with *Sigler v. Mutual Benefit Life Ins. Co.*, 506 F.Supp. 542 (S.D.Iowa), *aff'd*, 663 F.2d 49 (8th Cir.1981) [Death as a result of the autoerotic practice was not accidental.]; *Runge v. Metropolitan Life Ins. Co.*, 537 F.2d 1157 (4th Cir.1976), [The appellate court affirmed a district court's summary judgment in favor of the insurer, because the insured's death by autoerotic asphyxiation was not accidental.] and *International Underwriters, Inc. v. Home Ins. Co.*, 662 F.2d 1084 (4th Cir.1981), the Fourth Circuit Court of Appeals reversed the lower court's decision that a death by autoerotic asphyxiation was accidental.]

*Connecticut General Life Ins. Co. v. Tommie*, 619 S.W.2d 199 (Tex.Civ.App.1981). In *Tommie*, the Court affirmed a jury award of $120,000.00 in accidental death benefits to the deceased insured's wife and mother, who were joint beneficiaries under a group insurance policy. At trial, the jury found that the insured's death, although a consequence of the autoerotic practice, was not the result of a self-inflicted injury. Thus, the beneficiaries were not affected by the policy exclusion for any loss which results directly or indirectly from an intentionally self-inflicted injury.

In upholding the jury's finding as to the self-inflicted injury exclusion, the *Tommie* court stated:

> The evidence reveals that Mr. Tommie put a rope around his neck with the intent to tighten it to a degree necessary to reduce the amount of oxygen to the brain.... [W]e must determine from the record if a reduction of the supply of oxygen to the brain in order to produce a state of hypercapnia [5] is an injury within the normal and usual meaning of that term.

> There is abundant evidence that Mr. Tommie, aside from his propensity to unusual sexual practices, was a well-adjusted, happy individual who was looking forward to the future, and that he did not intend to commit suicide. There is also evidence that a state of hypercapnia simply alters the amount of oxygen in the brain, thus heightening or intensifying certain body sensations, and that it may be accomplished by various drugs as well as by other means. We believe this evidence and the reasonable inferences which may be drawn therefrom constitute some probative evidence that Mr. Tommie did not intentionally inflict upon

himself bodily injury in the normal and usual meaning of that term ...

*Id.* at 203.

Both the *Sigler* and *Tommie* decisions are similar in that the courts did not consider the insured's death to be the bodily injury that could trigger the policy's exclusion. Instead, the courts looked to see if the insureds' interference with their normal breathing process, which is central to the practice of autoerotic asphyxiation, constituted an injury for which coverage could be denied.[6]

With the restriction of the insured's breathing as the focal point of whether the self-inflicted injury exclusion applies, the Court finds the rationale of the *Sigler* court more persuasive. First of all, as with the decedent in *Sigler*, Mr. Brumfield's voluntary acts were intended to temporarily restrict the oxygen to his brain. Thus, "the elements of 'intentionally, self-inflicted' are satisfied" herein. *Sigler*, 506 F.Supp. at 545. Second, if another party had choked off Mr. Brumfield's air supply in the same fashion as he himself utilized, this Court would have found that Mr. Brumfield had been injured. The rather severe method of strangulation that is part of the autoerotic practice is clearly harmful to the tissues of the neck that are being constricted by the rope or cord commonly used to cut off the air supply, as well as to the brain tissue that are denied oxygen. As the court in *Sigler* reasoned, such an act "continues to be an injury even when it is self-inflicted." *Id.*

Based on the foregoing, the Court finds that the plaintiff's claim for accidental death benefits under the decedent's group insurance policy is precluded by the Policy's intentionally self-inflicted injury provision.

---

**5.** Hypercapnia is a condition in which an excessive amount of carbon dioxide accumulates in the blood stream.

**6.** In *International Underwriters, Inc. v. Home Ins. Co.*, 500 F.Supp. 637 (E.D.Va.1980), the district court held that the injury, for purposes of determining the applicability of the intentional self-inflicted injury exclusion, was the loss of consciousness that occurred prior to the in-

sured's death and not "self-inflicted partial asphyxia" as the *Sigler* and *Tommie* courts decided. *Id.* at 640. The *International Underwriters* court concluded that the decedent's loss of consciousness due to a mishap in the autoerotic practice was an intentionally self-inflicted injury. On appeal, the Fourth Circuit reversed the district court on other grounds. *International Underwriters, Inc. v. Home Ins. Co.*, 662 F.2d 1084 (4th Cir.1981).

Accordingly, IT IS ORDERED, ADJUDGED and DECREED that the defendant's motion for summary judgment BE and IT IS HEREBY GRANTED. IT IS FURTHER ORDERED, ADJUDGED and DECREED that the plaintiff's motion for summary judgment BE and IT IS HEREBY DENIED.

Because the Court denies coverage under the Policy exclusion for an intentionally self-inflicted injury, it pretermits the issue of whether Mr. Brumfield's death by autoerotic asphyxiation was an accident under Louisiana law.