United States Court of Appeals,

Fifth Circuit.

No. 94-10420.

Nancy J. TODD, Plaintiff-Appellee, Cross-Appellant,

v.

AIG LIFE INSURANCE COMPANY, et al., Defendants-Appellants, Cross-Appellee.

Nancy J. TODD, Plaintiff-Appellee, Cross-Appellant,

v.

GROUP ACCIDENT INSURANCE PLAN FOR EMPLOYEES OF E-SYSTEMS, INC., et al., Defendants-Appellants, Cross-Appellee.

March 29, 1995.

Appeals from the United States District Court for the Northern District of Texas.

Before WHITE, Associate Justice (Ret.),[*] BARKSDALE and PARKER, Circuit Judges.

WHITE, Associate Justice (Ret.):

This case, a suit for recovery of benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.,* involves the construction of an accidental death insurance policy and arises from the unfortunate death by asphyxiation of appellee's husband. The insurer refused to pay the policy's benefits after concluding that the death was not accidental. The district court granted summary judgment in appellee's favor, finding that the loss resulted from an accident within the terms of the policy, holding that liability extended beyond the insurer to

---

[*]The Honorable Byron R. White, Associate Justice of the United States Supreme Court, (Ret.), sitting by designation, pursuant to 28 U.S.C. § 294(a).

1

the employee welfare benefit plan and its administrator, and awarding attorneys' fees. The defendants appealed. We affirm the district court's judgment regarding policy coverage but reverse on the extended liability issue and remand for a proper determination of attorneys' fees.

## I.

Richard A. Todd was found dead at his home in Rockwall, Texas, on April 25, 1991. The cause of death was determined to be autoerotic asphyxiation, the practice of limiting the flow of oxygen to the brain during masturbation in an attempt to heighten sexual pleasure. When found, Todd was lying on his bed with a studded dog collar around his neck; the collar, in turn, was attached to two leather leashes of differing lengths, one of which passed over Todd's back and attached to an ankle. Apparently, Todd gradually tightened the collar around his neck by pulling on the leashes, thereby reducing the supply of oxygen reaching his brain. Instead of simply restricting the flow of oxygen enough to increase his sexual gratification, however, Todd tightened the collar to the point at which he passed out. Todd apparently designed the system of leashes to loosen the ligature in the event he became unconscious; unfortunately, the collar failed to release and ultimately terminated the flow of oxygen permanently. The autopsy report listed the cause of death as "asphyxia due to ligature strangulation," ruling the manner of death "accidental."

At the time of his death, Todd was covered by an "Accidental Death and Dismemberment Insurance" policy provided by his employer,

E-Systems, Inc., as part of an employee welfare benefit plan falling within the ambit of ERISA. AIG Life Insurance Company issued the E-Systems policy, which was administered by the Group Accident Insurance Plan ("GAI"), with David V. Roberts serving as the plan administrator.

Appellee, Nancy J. Todd, was the decedent's wife and his beneficiary under the policy. Shortly after her husband's death, appellee presented her claim for benefits to the E-Systems employee welfare benefit plan and AIG through a claims processing organization, the American International Adjustment Company ("AIAC"). In an October 1991 letter written on behalf of AIG, an AIAC claims examiner denied appellee's claim, finding that "[t]he circumstances of [Todd's] death point to the fact that he was risking his life by his actions" and explaining that "[a] death [cannot] be considered accidental ... [i]f from the viewpoint of the Insured, his conduct was such that he should have anticipated that in all reasonable probability he would be killed."

After the ERISA Appeals Review Committee upheld the claims examiner's decision, appellee filed suit against AIG and AIAC in Texas state court, alleging various state common law and statutory claims. The case was removed to the United States District Court for the Northern District of Texas based upon the applicability of ERISA. Faced with the contention that all of her state law claims were preempted by that statute, 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), appellee amended her complaint to allege a claim for

failure to pay benefits under the insurance policy pursuant to ERISA, 29 U.S.C. § 1132(a)(1)(B).  She also joined as parties the GAI Plan and its administrator, alleging that these defendants breached their fiduciary duties under ERISA, 29 U.S.C. §§ 1104(a) and 1109(a).  Cross-motions for summary judgment were filed.  The district court observed that "the parties are in agreement on the underlying facts," and that the case posed strictly the legal question whether the policy covered Todd's death.  Memo. Op. 1. The court filed an opinion and entered final judgment in favor of appellee on all issues.

Appellants present three issues on appeal:  whether Todd's death was covered by the AIG accidental death insurance policy, whether the ERISA employee welfare benefit plan and its administrator can be held liable for the benefits owed by the insurer, and whether the district court's calculation of attorneys' fees was proper.  We consider each in turn.

## II.

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  We review a district court's grant of summary judgment *de novo* and must evaluate the facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  In the ERISA context, in turn, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under

4

a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). *See also Schultz v. Metropolitan Life Ins. Co.,* 872 F.2d 676, 678 (5th Cir.1989). No such grant of authority was included in the E-Systems policy, so we accord no deference to the administrator's ultimate determination. *Cf. Pierre v. Connecticut General Life Ins. Co.,* 932 F.2d 1552, 1553 (5th Cir.) (concluding that a plan administrator's findings concerning facts underlying the claim for benefits should be reviewed for abuse of discretion), *cert. denied,* 502 U.S. 973, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991).

## A.

The first issue in this case is whether, on the facts before it, the district court erred in ruling the death to be accidental within the meaning of the policy insuring the plan. Preliminarily, we note that it is undisputed that federal law governs this issue, including the construction of the policy provisions. Congress, in adopting ERISA, expected that "a federal common law of rights and obligations under ERISA-regulated plans would develop." *Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1558; *see also Firestone,* 489 U.S. at 110, 109 S.Ct. at 954. In ascertaining the applicable federal common law, this court has explained, we may " "draw guidance from analogous state law.' " *Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1325 (5th Cir.1994) (quoting *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir.1990)). We must nevertheless

5

bear in mind that, "[i]n so doing, [we] may use state common law as a basis for new federal common law ... only to the extent that state law is not inconsistent with congressional policy concerns." *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 647 (7th Cir.1993); see also *Heasley v. Belden & Blake Corp.,* 2 F.3d 1249, 1257 n. 8 (3rd Cir.1993); *Jamail, Inc. v. Carpenters District Council of Houston Pension & Welfare Trusts,* 954 F.2d 299, 304 (5th Cir.1992).

We also note that the district court held that, in construing the language of ERISA plans, federal law must follow the rule of *contra proferentem,* which directs that when plan terms remain ambiguous after applying ordinary principles of contract interpretation, courts are to construe them strictly in favor of the insured.[1] This ruling comports with this court's holdings in ERISA cases. *Ramsey v. Colonial Life Ins. Co. of America,* 12 F.3d 472, 479 (5th Cir.1994); *Hansen v. Continental Ins. Co.,* 940 F.2d 971, 982 (5th Cir.1991). Other circuits also apply the rule in ERISA cases where construction of insurance documents is involved, *e.g. Heasley,* 2 F.3d at 1257-58; *McNeilly v. Bankers United Life Assurance Co.,* 999 F.2d 1199, 1201 (7th Cir.1993); *Delk v. Durham Life Ins. Co.,* 959 F.2d 104, 106 (8th Cir.1992);[2] *Kunin v. Benefit*

---

[1] Of course, the language of insurance contracts should be given their ordinary and generally accepted meaning if there is one, *see, e.g., Hardester v. Lincoln Nat'l Life Ins. Co.,* 33 F.3d 330, 334 (4th Cir.1994). "We interpret ERISA plans in an ordinary and popular sense as would a person of average intelligence and experience." *Meredith v. Allsteel Inc.,* 11 F.3d 1354, 1358 (7th Cir.1993).

[2] The company relies on *Brewer v. Lincoln Nat'l Life Ins. Co.,* 921 F.2d 150, 153-54 (8th Cir.1990), *cert. denied,* 501 U.S. 1238, 111 S.Ct. 2872, 115 L.Ed.2d 1038 (1991), to oppose the

*Trust Life Ins. Co.,* 910 F.2d 534, 539-40 (9th Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990); *see also Glocker v. W.R. Grace & Co.,* 974 F.2d 540, 544 (4th Cir.1992).[3]

At long last, we turn to the relevant provisions of the insurance policy involved here. First, the policy defines "injury" as "bodily injury caused by an accident occurring while this policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by this policy." Second is a schedule of benefits payable:

> Accidental Death and Dismemberment Indemnity: When injury results in any of the following losses to an Insured Person within 365 days of the date of the accident, the Company will pay in one sum the indicated percentage of the Principal Sum....

This provision is followed by a list of possible losses and corresponding benefits; death of the insured entitles the beneficiary to payment of the entire value of the policy. The policy contains various exclusions from coverage, including loss due to "suicide or any attempt thereat," but there is no general

---

application of *contra proferentem* in ERISA cases. Besides ignoring the controlling precedents in this Circuit, it also fails to mention the Eighth Circuit decision in *Delk,* cited above in the text, as well as the *Ramsey* court's reliance on *Delk* in applying *contra proferentem* in the ERISA context.

[3]The district court also observed, Memo. Op. 11, that it is the company's burden clearly to exclude those acts it does not intend to cover, and that acts that are not expressly omitted or excluded are covered. Applied literally, there being no exclusion for autoerotic acts or for intentionally inflicted injuries, no more would have been required to decide this case. As will be seen, however, the district court did not take this course, although it did make much of the fact that insurance companies are aware, because of claims made against them, that autoerotic practices exist and pose some risk of death.

7

exclusion for self-inflicted injury.

1.

We deal first with AIG's submission, presented to the district court and renewed here, that as a matter of federal law governing ERISA employee benefit plans the court should announce a *per se* rule that death or other bodily injury caused by autoerotic activity is never the result of an accident within the meaning of an accidental death or injury policy insuring such a plan. The essence of the argument is that common to all such activities is the intentional strangulation for the purpose of inducing asphyxia, which in this case led to death. "The "injury,' " it is said, "was the strangulation and the resulting asphyxia," and it could not have been "caused by an accident" because the injury was plainly intentionally inflicted. Brief of Appellants 12. So viewed, there is no ambiguity in the policy language and hence no room for the *contra proferentem* rule in cases such as this.

The district court, having noted the variety and ambiguity of dictionary and case-law definitions of the words "accident" and "accidental," and having reviewed the sparse history and current knowledge of autoeroticism, did not believe that the cases dealing with such activities warranted such a *per se* rule. We also are not impressed with AIG's submission. It is true that Todd intended to strangle himself to reduce the flow of blood and oxygen to the brain thereby creating the condition of asphyxia, a word denoting a shortage of oxygen reaching the brain or other bodily tissue. That condition need not result in the loss of consciousness, which

8

it will, of course, if prolonged for more than a few moments. The longer the asphyxia lasts, the greater the injury, and it need last only a few minutes for death to ensue. In this case, even if we assume that Todd intended the degree of injury from asphyxia that would cause him to lose consciousness, it is plain enough that this condition is not an injury that necessarily leads to death. It is commonplace for those who suffer from such a condition to regain consciousness and survive without any permanent damage. What killed Todd was not the mere loss of consciousness from the temporary lack of oxygen in his brain; it was the further injury to the brain and other bodily functions caused by the prolonged lack of oxygen-laden blood. To claim that such additional injury was intended is to aver that Todd intended to die, which AIG expressly agrees he did not. *See* Brief of Appellants 15.

Perhaps bodily injuries "intentionally" inflicted by the insured are not caused by accident, even without a policy exclusion of intentional injuries; but in our view the injuries that caused death in this case, and very likely in other similar cases, were not intentionally inflicted. The claimed basis for announcing a *per se* rule of federal law—that death by autoerotism of the kind involved in this case cannot be accidental—is thus untenable.

It is true that the federal courts of appeals to have dealt with cases of this kind have denied recovery under the applicable insurance policy. But none of those cases, which AIG cites in support of its *per se* rule proposition, purports to lay down any federal law governing ERISA insurance cases. None of them involved

9

an ERISA plan; each of them was a diversity action controlled by state law which dictated either that the death was not accidental or that a self-inflicted injury exclusion barred recovery under the policy.[4]

2.

Of course, the central question in this case remains to be decided: whether, even though Todd did not intend or expect to die, the injury that killed him was or was not an "accident" within the meaning of the policy.[5] That word, without more, the district

---

[4]*See Sims v. Monumental General Ins. Co.,* 960 F.2d 478, 480 (5th Cir.1992) (insurance policy expressly excluded any loss (including death) "resulting directly or indirectly, wholly or partly from ... an intentionally self-inflicted injury"); *Sigler v. Mutual Benefit Life Ins. Co.,* 506 F.Supp. 542, 545 (S.D.Iowa 1981) (explaining that the elements of an intentionally self-inflicted injury were met where the decedent's "voluntary acts were intended to temporarily restrict his air supply to heighten the sensations of masturbation"), *aff'd,* 663 F.2d 49 (8th Cir.1981); *International Underwriters, Inc. v. Home Ins. Co.,* 662 F.2d 1084, 1087 (4th Cir.1981) (applying Virginia law and concluding that, "[b]ecause the decedent voluntarily placed his neck in the [hangman's-type] noose and tightened the same to the point where he lost consciousness, we think his death was the natural result of a voluntary act unaccompanied by anything unforeseen except death or injury"); *Runge v. Metropolitan Life Ins. Co.,* 537 F.2d 1157, 1159 (4th Cir.1976) (same).

[5]Cases in this area have often debated whether there exists a valid distinction between various formulations of accidental death policies, particularly those that refer to injuries by "accidental means." The Texas Supreme Court has concluded that such phrases as " "accidental death' and "death by accidental means,' as those terms are used in insurance policies, must be regarded as legally synonymous unless there is a definition in the insurance contract itself which requires a different construction." *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 557 (Tex.1976). The court in *Wickman v. Northwestern Nat'l Ins. Co.* came to the same conclusion. 908 F.2d 1077, 1085-86 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). Because most recent cases seem to reject the accidental means distinction, and because the parties have not pressed the issue in this case, we do not believe any debate on

10

court observed, has no single, generally accepted meaning either in the dictionaries, the cases construing it, or in common parlance. Hence, after considering the published writings about autoerotic practices, the court turned to the cases dealing with such activities for help.

One of the few cases dealing specifically with deaths from autoeroticism, *Sims v. Monumental General Insurance Company,* 960 F.2d 478 (1992), came from this Circuit. It was not an ERISA case and was governed by Louisiana law. Recovery was denied under an accidental death policy, not because the death was not accidental, an issue the court carefully avoided, but because the policy expressly did not cover losses, including death, "resulting directly or indirectly, wholly or partly from ... [an] intentionally self inflicted injury."[6] We noted that recovery had also been denied by the Fourth Circuit in two similar cases, *International Underwriters, Inc. v. Home Ins. Co.,* 662 F.2d 1084 (1981), and *Runge v. Metropolitan Life Ins. Co.,* 537 F.2d 1157 (1976), on the ground that, under Virginia law, the deaths were not accidental; we also explained that, in another similar case, *Kennedy v. Washington Nat'l Ins. Co,* 136 Wis.2d 425, 401 N.W.2d 842, 846 (1987), the Wisconsin Court of Appeals had ruled that a death from autoeroticism was accidental and covered by the

---

this point affects our decision.

[6]The district court in the case before us stated that had the policy before it contained an adequate self-inflicted injury exclusion, which the insurer could have included in its policy but did not, recovery would have been denied.

11

insurance policy at issue.  The *Sims* court neither agreed nor disagreed with these three cases.

The essence of the two Fourth Circuit cases rejecting coverage was explained as follows:

> [D]eath was the natural result of a voluntary act unaccompanied by anything unforeseen except death or injury....  [The decedent] is bound to have foreseen that death or serious bodily injury *could* have resulted when he voluntarily induced unconsciousness with a noose around his neck.  We are thus of opinion that his death was not an accident under Virginia law....

*International Underwriters,* 662 F.2d at 1087 (emphasis added). *Sims* also noted *Sigler v. Mutual Benefit Life Ins. Co.,* 663 F.2d 49 (8th Cir.1981).  That decision rejected coverage for an autoerotic death based both on a self-inflicted injury exclusion in the policy and on its view, relying on *Runge, supra,* that the death was not accidental "since a reasonable person would have recognized that his action *could* result in his death."  *Id.* at 49 (emphasis added).

In *Kennedy,* the Wisconsin case, the sole issue was whether the term "accidental death" in the insurance policy included death by autoerotic asphyxiation.  The intermediate appellate court held that the death was accidental.  In doing so, based on decisions of the Wisconsin Supreme Court, it rejected the notion that death could not be accidental if it was a foreseeable or the natural result of a force or event voluntarily set in motion by the insured.  In the court's view, it was not enough that the act *might* or *could* have caused the injury or death;  only "when an insured participates in some act where serious injury or death is highly probable or an inevitable result"—only when it can be concluded

12

that the insured, in effect, intended that result—can the result of his conduct be held not to be accidental. *Id.* 401 N.W.2d at 846. As the court saw it, autoerotic activity may be risky but death is not a normal, expected result of this behavior; it was not of such a nature that Kennedy knew or should have known that it probably would have resulted in death. *Ibid.*

The district court in the instant case also discussed the decision by the Texas Court of Civil Appeals in *Connecticut General Life Insurance Company v. Tommie,* 619 S.W.2d 199 (1981), another case that involved a claim that a death from autoerotic activity was accidental and covered by the applicable insurance policy. The plaintiff relied on two experts, both of whom testified that death is not the normal or expected result of the kind of autoerotic activity in the case and that death would not be reasonably expected.[7] The court affirmed the jury verdict that the death was accidental, ruling that it could be otherwise only " "when the consequences of the act are so natural and probable as to be

_____

[7]"Dr. Norton testified that she encountered from time to time in her medical practice the same type of auto-erotic activity as Mr. Tommie was engaged in, and that while some forty deaths per year were reported in the United States as a result of such activity, death is not the normal expected result of that behavior, but would be considered unusual or unexpected. Dr. Montgomery also agreed that death in those circumstances would not be reasonably expected. Dr. Norton further testified that it was likely that Mr. Tommie had engaged in the practice for several years, considering his age and the fact that such behavior generally begins in young men during pubescence or shortly thereafter." *Tommie,* 619 S.W.2d at 202. We note here that while a ruling on the cross motions for summary judgment was awaited, appellee filed a designation of expert witnesses, indicating that her witnesses would testify as the experts had in *Tommie.*

13

expected by any reasonable person' " and were, in effect, intended by the insured. *Id.* at 202 (quoting *Freeman v. Crown Life Ins. Co.,* 580 S.W.2d 897 (Tex.Civ.App.1979)). This ruling was based on the Texas Supreme Court decision in *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 557 (Tex.1976), which held: "[I]njuries are "accidental' and within the coverage of an insurance policy ... if, from the viewpoint of the insured, the injuries are not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by [the] insured, or would not ordinarily flow from the action or occurrence which caused the injury."

After the review of these autoerotic death cases, which were governed by state law and which produced inconsistent results, the district court sought help from two ERISA cases that did not involve autoerotic activity. In *Brown v. American International Life Assurance Co.,* 778 F.Supp. 912 (S.D.Miss.1991), an arsonist, a participant in an ERISA plan, died in the fire she had lit. The court ruled her death accidental because she plainly had the subjective expectation that she would survive and because, on the facts presented, this expectation was not unreasonable. *Id.* at 918.

The second ERISA case that impressed the district court was *Wickman v. Northwestern Nat'l Ins. Co.,* 908 F.2d 1077 (1st Cir.), *cert. denied,* 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). There the deceased had climbed over a bridge guardrail and was holding on with one hand when he fell and later died from his

14

injuries. The court of appeals affirmed the judgment below that the death was not caused by an accident. The magistrate had found that serious bodily injury was substantially certain to happen and that "Wickman knew or should have known that serious bodily injury was a probable consequence substantially likely to occur as the result" of his conduct. *Id.* at 1081. This finding, the court of appeals said, "equates with a determination either that Wickman expected the result, or that a reasonable person in his shoes would have expected the result, and that any other expectation would be unreasonable." *Id.* at 1089. The district court in the case before us quoted the above passages from *Wickman* and ruled that as a matter of law Todd's death from autoerotic conduct was not substantially certain to happen and that he reasonably expected to survive. Memo.Op. 19-20.[8]

_____

[8]We note here that a definition of the word "accident" more favorable to the insured appealed to the United States District Court for the Western District of Arkansas in *Parker v. Danaher Corp.,* 851 F.Supp. 1287 (1994), a decision rendered a short time after the judgment of the district court in the present case and not cited by any of the briefs before us here. (An appeal in the case was dismissed on motion of the appellants on May 31, 1994.) Other than the instant case, *Parker* is the only case we found in which a federal court has interpreted and applied an accidental injury clause in an insurance policy issued in connection with an ERISA employee benefit plan where the claimed loss was a death connected with autoerotic activity.

The *Parker* court examined in some detail the cases involving claims under accidental death policies in which the fatalities resulted from autoerotic activities. It noted that these cases were not ERISA cases and apparently found nothing in them persuasive enough to decide the case before it. It also examined the First Circuit's decision in *Wickman, supra,* and found that opinion wanting. It preferred to follow what it deemed to be the teaching of the Eighth Circuit that ERISA plans and insurance policies connected therewith be interpreted as an ordinary plan

15

Having surveyed the authorities upon which the decision was based, we affirm the judgment of the district court that Todd's death was accidental and within the coverage of the policy insuring the employee benefit plan. That Todd neither intended nor expected to die as the result of his autoerotic conduct AIG does not dispute. Indeed, it did not invoke the policy's provision excluding coverage for suicide. Nor does it question the averments in Mrs. Todd's affidavit filed with her motion for summary judgment

participant would—meaning that the language should be given its ordinary rather than a specialized meaning. As the court saw it, under this approach "the common man in the street regards an accident as being something unintended, not according to the usual course of things, or not as expected." *Id.* at 1295. Because "it is undisputed that the *insured did not expect to die* ... in the common understanding of man Timothy Parker's death would be regarded as accidental." *Id.* (emphasis added). As we understand the opinion, under this view it is enough for the plaintiff to prove that the insured expected to survive without proving the reasonableness of that expectation. The court thought this approach wholly consistent with, if not dictated by, *Brewer v. Lincoln Nat'l Life Ins. Co.,* 921 F.2d 150 (8th Cir.1990). Interestingly enough, this was without the help of the *contra proferentem* doctrine, which the court ruled inapplicable in ERISA cases by reason of the Eighth Circuit's decision in *Brewer. But see Delk,* 959 F.2d at 106.

We observe also that the *Parker* definition of accident is not inconsistent with some dictionary definitions. *See, e.g.,* Webster's Ninth New Collegiate Dictionary 49 (9th ed. 1985) (defining "accident" as "an unforeseen and unplanned event or circumstance") Moreover, the First Circuit, in *Wickman,* seemed to indicate that the narrower definition had some support in the common law and took pains to explain it away. 908 F.2d 1077, 1087-88. Although Mrs. Todd was familiar with *Wickman,* we fail to find an argument for this more favorable definition in her written papers in the record before the district court, and the argument is not presented here. Indeed, in both courts, Mrs. Todd was and is content to submit that her husband's death was not only unintended and unexpected, but also that his expectation was quite reasonable.

that Todd was gainfully employed at the time of his death and that the Todds had been married for many years, had two children, were planning a family vacation soon, and were building a new house. The district court's finding that Todd did not expect to die is well founded.

The district court held, however, and the parties agree, that the deceased's expectation of survival, without more, is not enough. In this respect, the court adopted the essentials of the *Wickman* approach. That expectation must be reasonable; and, as we see it and as we think the district court saw it, the expectation would be unreasonable if the conduct from which the insured died posed such a high risk of death that his expectation of survival was objectively unrealistic. The district court concluded that the risk of death involved in the conduct at issue must reach the level of "substantial certainty" before the resulting death could be deemed nonaccidental. That language was borrowed from the magistrate judge's opinion in *Wickman;* but the district court also quoted the magistrate's words, which surely have the same import, describing the triggering risk to be that death was substantially likely to occur from the insured's volitional act, which the court of appeals in turn observed was the equivalent of "highly likely to occur."

We think the district court description of what is and is not an accident fell within the rules for construing insurance contracts, including the principle of *contra proferentem.* That is, what the district court did is consistent with, if not necessarily

17

compelled by, the rule that we interpret such policies in favor of the insured.  The district court here followed the essence of *Wickman:*  for death under an accidental death policy to be deemed an accident, it must be determined (1) that the deceased had a subjective expectation of survival, and (2) that such expectation was objectively reasonable, which it is if death is not substantially certain to result from the insured's conduct.  This holding was appropriate.

AIG, as it did in the district court, relies on the Fourth Circuit cases and *Sigler* from the Eighth Circuit to furnish the applicable standard, and asserts here that such a standard is really no different from the *Wickman* rendition.  Under those cases, however, it need be only foreseeable that death "could" result, not that death was "highly likely."  Of course, AIG's position that the versions are indistinguishable means that it is content with the *Wickman* approach.

This leaves us with the question whether the district court erred in holding that, as a matter of law, the autoerotic conduct in this case did not risk death to a "substantial certainty" (or its equivalents).  In our opinion, there was no error.  The record is silent on whether and how often Todd had previously practiced this conduct without dying.  But the materials before the court clearly indicated that the likelihood of death from autoerotic activity falls far short of what would be required to negate coverage under the policy we have before us.

In a treatise on autoerotic deaths, the authors observe that

"[a]utoerotic or sexual asphyxia refers to the use of asphyxia to heighten sexual arousal, more often than not with a nonfatal outcome." Hazelwood, Dietz & Burgess, *Autoerotic Fatalities* 49 (1983).[9] Similarly, the experts in the *Tommie* case testified that death from the practice would be considered unusual, *see* 619 S.W.2d at 202, and the court in the *Kennedy* case ruled that the risk of death from autoerotic practice is "not of such a nature that [the decedent] knew or should have known that it probably would result in death. Death was not a normal expected result of the behavior." 401 N.W.2d at 845. In addition, an article by Jane Brody in the New York Times of March 27, 1984, observes that, according to researchers, "[i]n a small but significant number of cases" of autoeroticism, "the person dies before he can restore his oxygen supply."

We cannot say the trial judge erred in his final ruling on this phase of the case. AIG complains that it was error to grant summary judgment to Mrs. Todd but does not allege that there was a factual dispute that required a trial; it asks only that we reverse and order judgment for AIG on its claim that no death from autoeroticism can be deemed an accident. This left to the judge to decide as a matter of law whether the risk of death from autoerotic

_____

[9]"The empirical study of autoerotic fatalities based on submitted cases was initiated by Roy Hazelwood in the Behavioral Science Unit of the FBI Academy at about the same time as Park Dietz was tracing the history of the subject while at Johns Hopkins and the University of Pennsylvania. Ann Burgess, who had been conducting studies of victims of sexual assault, proposed that we collaborate. This book is the product of that collaboration." Hazelwood, Dietz & Burgess, Autoerotic Fatalities, *ix.*

19

activity in general is sufficient to deny coverage as nonaccidental. As we see it, the trial court ruled correctly.

We add this postscript to this part of the case. It may be that all this writing is necessary to affirm this part of the judgment for appellee, but it is doubtful that it should have any longlasting significance for deciding cases like this. The life insurance companies have ample ways to avoid judgments like this one.

## B.

After concluding that appellee was entitled to payment of benefits for Todd's death under the E-Systems accidental death insurance policy, the district court went on to hold that liability for those payments also extends, by virtue of a breach of fiduciary duty, to the GAI Plan itself and to Roberts, the E-Systems plan administrator. The court determined that, "[b]ased on the overwhelming amount of evidence that Mr. Todd's death was "accidental' within the parameters of the policy *as drafted* this Court finds that the Plan Administrator did abuse his discretion in denying Plaintiff's request for benefits under the policy." Memo.Op. 21. The court noted that the policy included no specific grant of discretionary authority to the administrator to construe plan terms, and it focused upon the claims examiner's apparent reliance, in part, upon a conclusion that Todd engaged in "risky behavior" when no such caveat is stated or explained in the policy. Because appellee did not seek damages greater than the amount of benefits denied, *see Massachusetts Mutual Life Ins. Co. v. Russell,*

20

473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), the district court concluded that both GAI and Roberts were proper parties. The appellants argue that the district court erred in entering judgment against Roberts and the GAI Plan because there was no evidence of a breach of fiduciary duty on their part. We agree.

ERISA requires that a fiduciary, such as a plan administrator:

[S]hall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan; [and] (B) with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims....

29 U.S.C. § 1104(a)(1). The statute then provides that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries ... shall be personally liable to make good to such plan any losses to the plan resulting from such breach...." 29 U.S.C. § 1109(a). However, ERISA also provides that "[a]ny money judgment ... against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity...." 29 U.S.C. § 1132(d)(2).

We have already concluded that the administrator made an erroneous decision in denying benefits in this case. We disagree with the district court, however, that the administrator's reading of the policy in this case (through the claims examiner) "is

21

tantamount to rewriting the policy" and that his behavior "constitutes a blatant abuse of discretion" that rises to the level of a breach of fiduciary duty. Memo. Op. 21. Initially, it is important to note that our review of the record reveals no evidence that Roberts, as plan administrator, was personally involved in this case in any way. Moreover, as we discuss above, the claims examiner was required to make some determination of the risk involved in the autoerotic activity in evaluating whether Todd's death resulted from an "accident" within the meaning of the policy. Indeed, the examiner's letter recited language substantially similar to that employed by courts deciding similar cases. We disagree with the conclusion reached, but not with the examiner's basic analytical approach. Every erroneous benefits determination does not rise to the level of a breach of fiduciary duty, and appellee has failed to demonstrate that Roberts breached the statutory standard prescribed by ERISA.

Appellants also contend that the GAI Plan, as the employee welfare benefit plan maintained by E-Systems, is not a fiduciary under ERISA because it is only the source of benefits—i.e., a conduit for payment by AIG—and performs no fiduciary functions. Again, although the record is rather sparse on this point, we agree. ERISA defines the term "fiduciary" as follows:

> [A] person is a fiduciary with respect to a plan to the extent
> (i) he exercises any discretionary authority or discretionary
> control respecting management of such plan or exercises any
> authority or control respecting management or disposition of
> its assets, (ii) he renders investment advice for a fee or
> other compensation, direct or indirect, with respect to any
> moneys or other property of such plan, or has any authority or
> responsibility to do so, or (iii) he has any discretionary

22

authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Given that an ERISA plan as an entity cannot have discretionary authority over itself, we conclude that the GAI Plan does not fall within the statutory definition of a fiduciary and therefore cannot be liable for breach of duty.

C.

Under ERISA, "the court in its discretion may allow a reasonable attorneys' fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). Such an award, as the statute states, is purely discretionary; the Fifth Circuit reviews the district court's decision only for an abuse of discretion. *Salley v. E.I. DuPont de Nemours & Co.,* 966 F.2d 1011, 1016 (5th Cir.1992). The court has generally required, however, that the following five factors be considered in deciding whether to award attorneys' fees to a party under § 1132(g)(1):

> [A] court should consider such factors as the following: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' position.

*Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980). While other circuits have asserted that a presumption exists under ERISA in favor of awarding costs and attorneys' fees, that is not the law in the this Circuit. *Harms v. Cavenham Forest Industries, Inc.,* 984 F.2d 686, 694 (5th Cir.1993). In this case,

23

the district court does not appear to have considered the *Bowen* factors in making its award. Indeed, the court simply awarded the amounts requested in counsel's affidavit (one third of the amount of judgment, or $40,000, plus an additional $15,000 for this appeal).

The appellants object to the award of attorneys' fees in this case on a narrower ground, arguing that the district court abused its discretion in making the award without considering the amount of time expended and the hourly rate. The Supreme Court has endorsed the "lodestar" method for calculating attorneys' fees under federal "fee shifting" statutes. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The standards set forth in that case, the Court explained, "are generally applicable in all cases in which Congress has authorized an award of fees to a "prevailing party.' " *Id.* at 433 n. 7, 103 S.Ct. at 1939 n. 7. Of course, ERISA does not use the "prevailing party" language in its attorneys' fees provision. In later cases, however, the Supreme Court has consistently emphasized that the lodestar calculation provides an appropriate, objective basis on which to make an initial estimate of the value of a lawyer's services. *See, e.g., Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). And this court has approved the use of the lodestar calculation in ERISA cases, even if it has not been explicitly required. *See, e.g., Salley,* 966 F.2d at 1017.

In an ERISA case, the determination of attorneys' fees

24

requires the district court to apply a two-step analysis. The court must first determine whether the party is entitled to attorneys' fees by applying the five factors enumerated in *Bowen.* If the court concludes that the party is entitled to attorneys fees, it must then apply the loadstar calculation to determine the amount to be awarded. This calculation is accomplished by multiplying the number of hours expended on the matters at issue in the case by a reasonable hourly rate. *See Delaware Valley Citizens' Council,* 478 U.S. at 564, 106 S.Ct. at 3097; *see also Salley,* 966 F.2d at 1017. This two-step analysis in ERISA cases does not permit the award of a percentage of the recovery, such as is customary in contingent fee cases. Therefore, we find that the district court abused its discretion by failing to apply both the *Bowen* factors and the loadstar calculation. Accordingly, we vacate the district court's order concerning attorneys' fees and remand for a proper determination of the amount, if any, to which appellee is entitled through the application of the two-step analysis articulated above.

## III.

In summary, we hold that Todd's death resulted from a "bodily injury caused by an accident" within the meaning of the accidental death insurance policy at issue; we AFFIRM the district court's judgment on this point. We REVERSE the district court's decision, however, insofar as it holds the GAI Plan and Roberts liable for the payment of benefits to appellee. Finally, we VACATE the court's judgment on attorneys' fees and REMAND for recalculation.

*It is so ordered.*