**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-50061
Summary Calendar

CAROLYN J. GIBBS,

Plaintiff-Appellant,

VERSUS

ASHLEY E. GIBBS, a Minor Child and ANDREW F. GIBBS, a Minor Child,

Intervenor Plaintiffs-Appellees,

VERSUS

GENERAL AMERICAN LIFE INSURANCE COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas

March 3, 1999

Before DAVIS, DUHÉ, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Appellant Carolyn J. Gibbs appeals the denial of her motion for attorney's fees in an ERISA case against Appellee General American Life Insurance Company. Instead, the district court

awarded General American its attorney's fees.  We affirm in part and vacate in part.

## Background

Carolyn J. Gibbs married Joel Gibbs in 1988.  They had two children, Ashley and Andrew, who are Intervenors in this action. Joel Gibbs was employed by Waco Magnetic Imaging and as part of his employee benefits package, he was issued an insurance policy through General American Life Insurance Company ("General American").  Carolyn Gibbs was the named beneficiary of the policy. In 1995, Carolyn and Joel Gibbs separated, and in December of that year, Joel filed for divorce.  The divorce proceedings upset Carolyn Gibbs to such a degree that she told a friend that it would be easier to deal with if Joel Gibbs were killed in a car wreck.

On January 25, 1996, Carolyn Gibbs took her children to the Mothers' Day Out program at Crestview Church of Christ.  Carolyn Gibbs discovered that her son Andrew had forgotten his lunch, so she told him that his father would bring his lunch.  When Andrew cried, she promised that she would bring it herself.  At approximately 9:30 a.m., she called Joel Gibbs' office and was told by the office manager that he was on the phone.  Carolyn Gibbs told the office manager that she was late for school and asked her to tell Joel to go by her townhouse to get Andrew's lunch and to take it to him at school.  Carolyn told the office manager to tell Joel that she would leave the kitchen door unlocked.

Joel Gibbs left work at 9:50 a.m. to retrieve Andrew's lunch.

2

When he did not return after a few hours, the police were contacted. Joel Gibbs did not respond to telephone calls or to his pager. Carolyn Gibbs had three classes at Baylor University from 9:30 a.m. to 2:00 p.m. At approximately 2:30 p.m. she picked up the children at Crestview. Andrew was crying when she picked him up and said that his daddy hadn't brought his lunch. Carolyn Gibbs then drove home and noticed Joel's car in the carport. She then noticed a police car and an officer in uniform who said that the police had been called by Joel Gibbs' office.

Carolyn Gibbs told the officer to drive around to the front door because of the chow dog in the backyard. She took the children in the backdoor and immediately noticed how messy the house was. Pictures and videos were spread on the floor, and drawers were opened and appeared as if they had been searched. She called Joel's name but received no response. She went upstairs and saw Joel lying in the hallway with blood everywhere. She then ran downstairs and took the kids out the front door.

The police entered the house and found Joel Gibbs' body. Although the police told Carolyn Gibbs that it appeared her husband killed himself, it was later determined that he had been stabbed numerous times and that his throat had been cut and that he had been killed hours earlier. The Hewitt Police Department released the townhouse back to Carolyn Gibbs at approximately 5:00 p.m. The next day, Carolyn Gibbs' father, who had arrived the previous evening from Colorado, was instrumental in arranging for his

3

daughter's Sunday School class to clean up the townhouse. This included ripping out the bloodstained carpet, repainting the walls, and generally cleaning up all signs of the murder.

The Hewitt Police Department contacted the Texas Rangers for assistance, but their investigation did not begin until after the townhouse had been cleaned. The murder weapon was found at a subsequent time. Carolyn Gibbs discovered additional bloodstains when she returned to the townhouse on January 31 for a final cleaning before she left town. She pointed those out to the police. Items discovered missing from the townhouse included a camcorder, some home videos, Carolyn Gibbs' high school class ring, and one of the children's silver baby mug. Ten days after the murder, Carolyn Gibbs was approached by the Texas Rangers to undergo a polygraph examination. Upon advice of counsel, she declined.

Carolyn Gibbs and her children moved in with a friend for approximately four weeks. They then moved to Colorado Springs to live with her parents. In January 1997, Carolyn Gibbs' former boyfriend, Bartley Bell, moved to Colorado; they married in July.

In April 1996, Gibbs submitted a claim for the proceeds from Joel Gibbs' life insurance policy to his employer. General American received the claim in July 1996. General American was advised by Joel Gibbs' employer that Carolyn Gibbs was a suspect in her husband's death. The Hewitt Police Department advised General American that Carolyn Gibbs had not been ruled out as a suspect.

4

In October 1996, Carolyn Gibbs contacted General American to determine the status of her claim. General American contacted the Hewitt Police Department again and was informed that Carolyn Gibbs still had not been eliminated as a suspect. General American then wrote her and informed her that the claim would not be paid until the investigation into Joel Gibbs' death had been completed. The insurance policy at issue contained a provision which allowed a beneficiary suspected to be involved in an insured's death to waive payment of the proceeds and designate another beneficiary. Under this provision, Carolyn Gibbs could have waived her entitlement to the insurance proceeds and have had them assigned to her minor children. She elected not to make this waiver.

Carolyn Gibbs initiated a suit for benefits under ERISA against General American in February 1997, claiming that General American had refused to pay the benefits due her. At that time, General American filed an interpleader counterclaim under Federal Rule of Civil Procedure 22, depositing the insurance proceeds into the registry of the court in the amount of $88,852.00. Carolyn and Joel Gibbs' two minor children intervened, and a guardian ad litem was appointed to represent their interests.

After a bench trial, the district court concluded that Carolyn Gibbs had not prevailed on her claims against General American but that she had prevailed in her claims against the Intervenors because they failed to prove by a preponderance of the evidence that Carolyn Gibbs caused or was involved in the death of Joel

Gibbs.  This conclusion is not the subject of this appeal.  This appeal is solely about attorney's fees under ERISA.  Carolyn Gibbs requested payment of her attorney's fees by General American.  The district court found that General American had not acted in bad faith and denied Gibbs' request for attorney's fees.  However, the district court determined that General American was entitled to an award of fees in the amount of $21,100.85 to be paid by Gibbs in order to deter others from filing premature lawsuits to collect insurance benefits.  The district court further determined that the guardian ad litem's fees and costs in the amount of $19,047.98 were to be paid by Gibbs from the proceeds of the insurance policy.  Gibbs timely appeals.

## Analysis

Under ERISA, "the court in its discretion may allow a reasonable attorneys' fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  This court reviews the district court's decision with respect to the award of costs and fees under ERISA for an abuse of discretion.  *Todd v. AIG Life Insurance Co.*, 47 F.3d 1448, 1458 (5th Cir. 1995).  This court considers five factors in determining whether an attorney's fee award is appropriate:

> (1)  the degree of the opposing parties' culpability or bad faith;
>
> (2)  the ability of the opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' position.

*Id.* (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255 (5th Cir. 1980)).

We note at the outset that the district court did not abuse its discretion in denying Gibbs' request for attorney's fees. It was entirely appropriate for General American to interplead the proceeds of the insurance policy as General American was merely attempting to avoid multiple claims and double payments.

We also conclude that the district court abused its discretion in awarding attorneys' fees to the guardian ad litem. In *Martin v. Blue Cross and Blue Shield of Virginia, Inc.*, 115 F.3d 1201 (4th Cir. 1997), the Fourth Circuit held that only a prevailing party is entitled to a consideration for attorneys' fees in an ERISA action. This holding is consistent with this circuit's statement in *Boggs v. Boggs*, 82 F.3d 90 (5th Cir. 1996), *rev'd on other grounds*, 520 U.S. 833, 117 S.Ct. 1754, 138 L.Ed.2d 45 (1997), explaining that ERISA "allows the court to award ERISA beneficiaries, participants, and fiduciaries reasonable attorney's fees and costs when they are the prevailing party." *Id.* at 94 n. 1. As the court in *Boggs* affirmed the district court's denial of the plaintiff's request for

7

declaratory judgment, it concluded that the plaintiff was not entitled to attorneys' fees. In the present case, the Intervenors were not the prevailing party. For this reason, the guardian ad litem is not entitled to attorneys' fees.

The last issue that we address is the award of attorney's fees and costs to General American, the defendant in this lawsuit. Although ERISA provides that the court may in its discretion award costs and attorney's fees "to either party," we note the conspicuous absence of any case citation by General American wherein a defendant was awarded costs and attorney's fees under ERISA. The reason is obvious--such awards to the defendant are rare. Although we recognize that General American is the prevailing party in this case, this status merely provides for "consideration" for attorneys' fees. There is no presumption in this circuit in favor of awarding costs and attorneys' fees under ERISA. *Todd*, 47 F.3d at 1459. This is especially true in the case of a prevailing defendant. As stated in *Marquardt v. North AM. Car Corp.,* 652 F.2d 715 (7th Cir. 1981), even if the defendant prevails in an ERISA action, consideration of the appropriate factors for awarding attorneys' fees "will seldom dictate an assessment of attorneys' fees against ERISA plaintiffs." *Id.* at 720.

In awarding costs and fees to General American, the district court relied heavily upon Factor #3: whether an award of attorneys' fees against the opposing party would deter other

8

persons acting under similar circumstances. According to the district court, "the award of attorneys' fees to Defendant would, hopefully, deter others from filing premature lawsuits to collect insurance proceeds when the beneficiary remains under suspicion of having murdered the insured." Findings of Fact and Conclusions of Law (Dec. 15, 1997), p. 8-9, ¶ 6. We acknowledge that the record is clear that the district court found Gibbs to be an unsympathetic plaintiff. The fact that Gibbs remained under suspicion for her husband's murder when she initiated suit was pivotal in the district court's decision. But that fact cannot be viewed in a vacuum. Had it not been for the Hewitt Police Department's allowing most of the physical evidence to be cleaned up or destroyed shortly after the murder, someone might have been charged with the murder in the foreseeable future. But as it now stands, Gibbs may be a suspect forever. We find that the deterrence factor will be sufficiently satisfied with Gibbs' being required to pay for her own attorney's fees and the Intervenor's fees. Under these circumstances it was an abuse of discretion to require Gibbs to also pay General American's fees and costs. Therefore, although § 1132(g)(1) does not explicitly differentiate between plaintiffs and defendants in an ERISA case, we do not think that this is the exceptional case in which a defendant should be awarded attorneys' fees.

Accordingly, the judgment of the district court awarding costs and attorney's fees to General American Life Insurance Company and

to the guardian ad litem is vacated.  The judgment in all other respects is affirmed.

AFFIRMED IN PART; VACATED IN PART.