**METROPOLITAN LIFE INSURANCE
COMPANY, Plaintiff,**

v.

**Maura BISCHOFF, as Next Friend
of John B. Doran, a Minor,
Defendant.**

No. A–03–CA–102–SS.

United States District Court,
W.D. Texas,
Austin Division.

Feb. 17, 2004.

Linda G. Moore, Paul E. Ridley, Kirkpatrick & Lockhart, LLP, Dallas, TX, for Plaintiff.

Mark L. Kincaid, Kincaid Horton & Smith, Austin, TX, D. Mark Davis, John L. Thompson, Craddock, Reneker & Davis,

LLP, Dallas, TX, Sean J. Petrie, Austin, TX, for Defendants.

## ORDER

SPARKS, District Judge.

BE IT REMEMBERED on the 16th day of February 2004 the Court reviewed the file in the above-styled cause, and specifically the Guardian Ad Litem's Motion for Attorney's Fees [# 42], supplement thereto [# 44], and Plaintiff's response [# 45], and the Guardian Ad Litem's reply [# 47], as well as Defendant Maura Bischoff's Motion for Attorney's Fees [# 48] and the Plaintiff's response thereto [# 49], and the Guardian Ad Litem's reply [# 51]. Having considered the motions, responses, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

### Background

On February 20, 2003, Metropolitan Life Insurance Company ("MetLife") filed this lawsuit against Maura Bischoff, when after forwarding $126,294.52 in life insurance proceeds plus interest to Bischoff's minor son, John Doran, MetLife realized it had erred since (1) it had given the proceeds directly to a minor, and (2) there was a later-filed beneficiary designation form. MetLife filed the lawsuit to prevent Bischoff or her son from spending the proceeds. In a status conference, Bischoff agreed to place the funds in a savings account and not spend them until this case was resolved. Then, on June 12, 2003, MetLife filed an amended complaint, which included an interpleader action against Krista Doran, the second wife of the insured, who was also claiming she was entitled to the insurance proceeds as a beneficiary. In this amended complaint, MetLife sought a declaratory judgment from the Court regarding who was entitled to the benefits under the two life insurance plans at issue in this case without taking a position on the question even though it had paid the proceeds to one claimant and sent a letter to that same claimant stating he was not entitled to any proceeds. *See* Am. Compl. ¶¶ 20–24.

The source of the confusion regarding who was entitled to the life insurance policies' proceeds was two beneficiary designation forms filled out by Frank Doran, the deceased insured. Frank Doran, a former employee of Home Depot, had two MetLife life insurance policies, a basic plan for $20,000 and a voluntary plan for $105,000. Both originally designated John Doran, Frank Doran's minor son by his first marriage to Bischoff, as the beneficiary. However, after he remarried, Frank Doran filled out a form to change the beneficiary and in the space after "basic plan" wrote his second wife's name, Krista Doran. He did not fill in the space next to "voluntary plan." (When MetLife originally forwarded the proceeds to minor John Doran, it only had the older beneficiary form as Home Depot had not supplied it with the more recent form designating Krista Doran.) Bischoff, on behalf of John Doran, and Krista Doran dispute the significance of leaving the space next to "voluntary form" blank. Notably, by the terms of his divorce decree from Bischoff, Frank Doran was obligated to maintain $50,000 in life insurance for the benefit of John Doran. Bischoff and Doran eventually reached an agreement in or around November 2003 that Krista Doran was entitled to the $20,000 in proceeds from the basic policy and John Doran was entitled to $50,000 of the voluntary policy payout due to the divorce decree. However, for a period of time, they could not resolve who was entitled to the remaining $55,000 from the voluntary policy, which depended on how Frank Doran's leaving the space blank after "voluntary plan" on the form was

interpreted. MetLife did not weigh in on the question.

Because at this point the parties had reached an impasse and MetLife declined to participate by pleading or take a position regarding the interpretation of the policies and beneficiary designations, Bischoff moved for the Court to appoint a guardian ad litem to evaluate the proposed settlement dividing the insurance proceeds between John Doran and Krista Doran to ensure the settlement was in her son's best interests. The Court did appoint a guardian ad litem, Sean Petrie, to "represent the interests" of minor John Doran and to "act of his behalf, including the authority to sign a proposed agreed judgment on behalf of John Doran." Nov. 10, 2003 Order. Petrie met with Bischoff and John Doran, conferred with the attorneys for Bischoff, Krista Doran and MetLife, and analyzed the settlement offer along with the pleadings, discovery and law relevant to this case. *See* Petrie Decl. ¶ 2. Additionally, Petrie filed proposed findings of fact and conclusions of law on behalf of John Doran and renegotiated the settlement, securing a considerably larger settlement offer for the minor than he had been offered prior to Petrie's appointment. *Id.* at ¶¶ 2, 7. In doing so, Petrie incurred $5,550 in attorney's fees and $111.17 in expenses. Petrie has filed a motion to recover his attorney's fees and expenses from MetLife under 29 U.S.C. § 1132(g)(1). Bischoff subsequently filed a similar motion. Both motions are ripe for adjudication.

## Analysis

### I. Guardian Ad Litem's Motion for Fees and Expenses

■ Petrie moved for attorneys fees and expenses under, which states in its entirety: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of action to either party." MetLife contends it is improper for Petrie to move for fees and costs under this statute because the statute, by limiting its applicability to "any action under this subchapter," applies only to actions under 29 U.S.C. § 1132. Therefore, argues MetLife, because MetLife did not bring this interpleader action under 29 U.S.C. § 1132 and John Doran did bring an action under § 1132(a)(1)(B), Petrie cannot recover fees and costs under § 1132(g)(1). However, MetLife misunderstands the phrase "any action under this subchapter," which it interprets it to mean "any action under § [that is, *section*] 1132." The "subchapter" in which § 1132(g)(1) is located and to which it refers, is Subchapter I of ERISA, entitled "Protection fo Employee Benefits Rights Plans," which is codified at 29 U.S.C. § 1001 through 29 U.S.C. § 1191c.

Having interpreted the term "subchapter," the Court returns to the question of whether this is a suit under Subchapter I of ERISA by a by a participant, beneficiary, or fiduciary and therefore whether it has the discretion to award costs and fees to any party. *See* 29 U.S.C. § 1132(g)(1). Because MetLife filed this lawsuit under "federal law, the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, et seq.," [1] and Subchapter I of ERISA begins with 29 U.S.C. § 1001, it appears this is an "action under [Subchapter I]," as 29 U.S.C. § 1132(g)(1) requires. Furthermore, this is an action by a plan fiduciary, MetLife, the claims administer of the life insurance policies at issue in this case. *See* Am. Compl. ¶ 8 ("MetLife administers the claims process of the Life Insurance Plans ...."); *see*

---

1. Am. Compl. ¶ 4; Orig Compl. ¶ 3.

*also* 29 U.S.C. § 1002(21)(A) (defining "fiduciary" as a party who exercises "any discretionary authority or discretionary responsibility in the administration" of an employee life insurance plan).

■ Unlike most attorneys' fees statutes, 29 U.S.C. § 1132(g)(1) enables a court to award costs and fees to a party even if that party did not prevail. *Gibbs v. Gibbs*, 210 F.3d 491, 503 (5th Cir.2000). This includes discretion to award fees and costs to a court-appointed ad litem, whose "fees and expenses in the role of attorney ad litem would be treated as any other attorneys' fees." *Id.* at 506. There are five factors this Court must consider in deciding whether to exercise its discretion to award attorney's fees, as the Fifth Circuit reiterated in *Gibbs:*

(1) the degree of the opposing parties' culpability or bad faith;

(2) the ability of the opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing party would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Gibbs*, 210 F.3d at 504 (citing *Todd v. AIG Life Ins. Co.*, 47 F.3d 1448, 1458 (5th Cir. 1995)). "No single factor is determinative, but 'together they are the nuclei of concerns' guiding [this Court's] review." *Bannistor v. Ullman*, 287 F.3d 394, 409 (5th Cir.2002). In this Court's opinion, at least the first three factors weigh in favor of awarding fees and costs to the guardian ad litem against MetLife.

## A. First Factor: Culpability of Met-Life

■ The existence and complexity of this lawsuit, as well as the fees and expenses incurred by the guardian ad litem, are due in large part to errors, actions, and inaction on the part of MetLife. Specifically, it was MetLife who paid the insurance proceeds directly to a minor who, as it turns out, was not the beneficiary named on most recent designation form. Then, after discovering there was a later designation form, but John Doran was claiming an interest in the proceeds as well, MetLife did not follow the claim review and denial procedures required by ERISA or the summary plan description or adequately investigate the facts and evidence (*e.g.*, of the divorce decree) involved in this case. Instead, MetLife sent John Doran an unsigned letter explaining it had located a later beneficiary designation and asked him to return the check MetLife had sent him. Shortly thereafter, MetLife filed this lawsuit, converting in into an interpleader action so the Court could resolve who was entitled to the proceeds.

However, if MetLife had followed the claims review procedures required by ERISA and its own plans, it would have discovered the divorce decree, in which case it would have most likely stated it was taking no position with regard to who was entitled to the benefits instead of sending John Doran the letter summarily denying his claim to the proceeds. Instead, the guardian ad litem spent significant time and energy investigating whether MetLife had ever made a "final determination" of who was entitled to the life insurance proceeds, and thus whether this Court would have to review that determination under an abuse of discretion standard. However, as the guardian ad litem points out, the

fact that MetLife sent a letter denying John Doran's claim and that it filed this lawsuit created an issue regarding whether MetLife had determined Krista Doran was entitled to the insurance benefits, and therefore, whether the Court had to defer to that finding. While MetLife maintains that is an interpleader action "in which it made no decision," when asked by the guardian ad litem to sign an affidavit attesting that it had made no decision, MetLife refused to do so. *See* Guardian's Reply to Pl.'s Resp. to Bischoff's Mot. for Fees, Attached Aff. of Petrie ¶ 2.

In sum, if MetLife had exercised its obligations under the plans and ERISA, this would have been a very straightforward interpleader action, most likely not requiring the involvement of a guardian ad litem and therefore, this first factor weighs in favor of awarding attorney's fees. *See Bannistor*, 287 F.3d at 398–99 (5th Cir. 2002) ("[T]he first factor weighs in favor of the award notwithstanding any lack of bad faith because [the fiduciaries'] actions were primarily responsible for Appellees' losses"); *cf. Gibbs*, 210 F.3d at 505 (considering that the insurer neither acted in bad faith nor failed to conduct an adequate investigation in holding the first factor weighed against awarding attorneys' fees).

### B. Remaining *Todd* Factors

■ MetLife does not dispute that the second factor, ability to pay an award, weighs in favor of awarding the guardian ad litem fees and fully admits MetLife has the resources to pay the $4,990.00 in fees and $111.17 in expenses the guardian has requested. The third factor also weighs in favor of awarding fees because awarding fees in this case will discourage MetLife from attempting to decide disputed beneficiary questions with atypical fact situations in such a hasty manner, without consider-

ation of the evidence, and with premature resort to the courts.

The guardian ad litem also maintains the fourth factor—whether the case involves a significant ERISA question—also favors a fee award because although this case did not involve a significant question regarding ERISA itself, it involved a significant question regarding the application of ERISA to a unique set of facts. The Fifth Circuit has recognized that questions regarding the application of ERISA to usual facts do favor an award of fees. *See Bannistor*, 287 F.3d at 408–409 ("They did not present a 'significant' legal question regarding ERISA itself, but they did present a significant question involving the application of ERISA to unusual facts."). Petrie maintains that the questions of whether MetLife had made a "determination" and if so, whether the Court was required to evaluate that determination under an abuse of discretion standard, involved such unique questions. MetLife disputes that these were significant issues. Petrie admits the fifth factor, the relative merits' of the parties positions, is most likely neutral, neither favoring or disfavoring a fees award, since the case is settled. The Court agrees but considers the fourth factor similarly neutral in its calculus in light of the settlement of the claims. Regardless, the combination of the first three factors, even taking into consideration the neutral impact of the last two, lead the Court to conclude it should award the guardian ad litem, Petrie, his fees against MetLife.

### II. Bischoff's Motion for Fees and Expenses

■ Bischoff has also filed a motion for attorneys' fees and costs, largely tracking the arguments of the guardian ad litem in his motion. However, the first factor, the culpability of MetLife, loses some of its

force with regard to counsel for Bischoff as it appears the guardian ad litem's work would have been lessened if that attorney had done the research and investigation performed by the guardian ad litem. To order MetLife to pay Bischoff's and the guardian ad litem's fees would be to order MetLife to pay twice for the same set of errors, actions and inaction. Therefore, the Court declines to exercise its discretion and award attorney's fees to Bischoff.

In accordance with the foregoing:

IT IS ORDERED that the Guardian Ad Litem's Motion for Attorney's Fees [# 42] is GRANTED and the Guardian Ad Litem, Sean J. Petrie, is awarded $4,990.00 in fees and $111.17 in expenses.[2]

IT IS FURTHER ORDERED that Defendant Maura Bischoff's Motion for Attorney's Fees [# 48] is DENIED.

---

2. MetLife has not disputed the reasonableness of Petrie's fees or expenses, only whether he entitled to recover his fees and expenses at all. The Court, however, has reviewed the requested fees and expenses and finds them reasonable.