BOOK v MONUMENTAL LIFE INSURANCE COMPANY

Docket No. 259362. Submitted July 12, 2006, at Lansing. Decided July 18, 2006, at 9:00 a.m.

Lawrence Book, as personal representative of the estate of Robert C. Whitman, Jr., brought an action in the Jackson Circuit Court against the Monumental Life Insurance Company, seeking payment of benefits under the decedent's life insurance policy. The trial court, Chad C. Schmucker, J., granted summary disposition for the defendant, ruling that the insurance policy exclusion for death resulting from a self-inflicted injury applied to the decedent's death, which had resulted when he was unable to extricate himself from a noose around his neck while engaged in autoerotic asphyxiation. The defendant appealed.

The Court of Appeals *held*:

The trial court correctly concluded that the decedent's death was not covered under the policy because it was caused by a self-inflicted injury. When an individual successfully attempts to deprive the brain of oxygen and death ensues, the death is the result of a self-inflicted injury, notwithstanding the fact that, through the employment of various safety mechanisms, the decedent had fully anticipated surviving.

Affirmed.

INSURANCE — LIFE INSURANCE POLICIES — EXCLUSIONS — DEATH FROM SELF-INFLICTED INJURIES.

Death that results from autoerotic asphyxiation is death that results from self-inflicted injury for purposes of a life insurance policy exclusion for death resulting from self-inflicted injury.

*Logeman, Iafrate & Pollard, P.C.* (by *James A. Iafrate*), for the plaintiff.

*Bush Seyferth Kethledge & Paige PLLC* (by *Richard W. Paige*) for the defendant.

Before: DONOFRIO, P.J., and O'CONNELL and SERVITTO, JJ.

O'CONNELL, J. Plaintiff appeals as of right the trial court's order granting summary disposition to defendant. We affirm. The parties dispute whether decedent's life insurance policy covers his death from autoerotic asphyxiation. We agree with the trial court that intentionally depriving the brain of oxygen to generate a physical sensation constitutes a self-inflicted injury. Because the policy excluded death resulting from a self-inflicted injury, plaintiff may not recover. When an individual successfully attempts to deprive the brain of oxygen and death ensues, the death is the result of a self-inflicted injury, notwithstanding the fact that, through the employment of various safety mechanisms, the decedent had fully anticipated surviving.

In this case, decedent hung himself from his basement ceiling with a padlocked chain. He knew the risk of death, because a friend had died in a similar fashion. Decedent was apparently standing on his tiptoes on a board atop a stool when the stool broke, leaving him to hang to death. Although plaintiff argues that the broken stool caused decedent's death, decedent was not using the stool to fix a ceiling fan or change a light bulb; he was using it to support, partially, his hanged body. Therefore, it was decedent's own effort to deprive his brain of oxygen that ultimately led to his death.

Although the jurisdictions are split over the injury issue, we find the discussion in *MAMSI Life & Health Ins Co v Callaway*, 375 Md 261; 825 A2d 995 (2003), persuasive. Mechanically depriving one's brain of oxygen is self-inflicted asphyxiation, a physiological impairment (injury) that, if prolonged, directly leads to loss of consciousness and death.[1] As any asthmatic would

---

[1] To further the distinctions *MAMSI* drew between autoerotic asphyxia and other thrill-seeking conduct, we note that the most distinguishing feature is the self-asphyxiating individual's attempt to accomplish a

agree, a lack of oxygen has instant, debilitating effects on the body, and even momentary deprivation is injurious from its onset to its alleviation.[2] Here, decedent sought the sensations created by his self-induced hypoxia, and he used the chain as a noose for this purpose. His death resulted from his inability to extricate himself from the noose when his support gave way, so the death resulted from (and, more accurately, was an overextension of) his self-inflicted injury.

Affirmed.

direct and immediate physiological impairment through a notoriously destructive means. The individual is not seeking to change the brain's perception through an external or internal intoxicant, but trying to suffocate it in a controlled, measured manner. This distinguishes this type of behavior from holding one's breath under water, bungee jumping, smoking tobacco, and drinking alcohol. See *MAMSI, supra* at 276-277. In these hypothetical instances, the experience sought and intended is not derived from a limited form of the deadly result (i.e., drowning a little, breaking a few bones, contracting isolated lung cancer, or having partial liver failure). Instead, these injuries are often too unlikely, ancillary, or remote to dissuade participation in the immediate act. Autoerotic asphyxiation has as its aim the controlled deprivation of life-giving oxygen, and, as in the case at bar, it often involves the deadliest sorts of contrivances to accomplish that end. A casual observer might think that the idea was to get as close to death as possible, without crossing over. For our purposes, decedent's actions required for their fulfillment the intentional deprivation of an urgent bodily need. As he anticipated, his brain struggled to cope with the deprivation, so any of the short-lived hypoxic episodes caused by his controlled asphyxiation constituted a self-inflicted injury, no matter how quickly alleviated.

[2] Certainly a man playing football is injured when he has the "wind knocked out of him."