Felicia MADDEN, Administrator of the Estate of Phillip Madden and Individually, Plaintiff–Appellant,

v.

UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, Defendant–Appellee.

No. 16-3740

United States Court of Appeals, Seventh Circuit.

Argued September 13, 2017

Decided October 17, 2017

Before BAUER, ROVNER, and SYKES, Circuit Judges.

BAUER, Circuit Judge.

This case was brought by the estate of decedent Phillip Madden ("Madden"). The claim arises under the Federal Tort Claims Act against the United States from an ultimately fatal medical incident Madden suffered while in the care, custody, and control of the Jessie Brown V.A. Medical Hospital ("Hospital"). After a bench trial, the district court found in favor of the United States. Madden now appeals. For the reasons that follow, we affirm.

## I. BACKGROUND

Madden suffered from numerous medical conditions, including, but not limited to: morbid obesity,[1] respiratory acidosis, congestive heart failure, chronic obstructive pulmonary disease, obstructive sleep apnea, obesity hypoventilation syndrome, hypertension, and hyperlipidemia. Madden was admitted to the Hospital several times leading up to his last admission on December 28, 2007.

On December 28, 2007, Madden went in for an outpatient visit. The lab results were abnormal, which led to his admission to the Hospital. At the time of his admission, the pulmonary consult service described him as suffering from a wide range of medical issues, including those listed above as well as others. A thorough investigation was recommended in an attempt to improve Madden's clinical outcome. As a result, the Hospital took the precautionary measure of placing Madden in respiratory isolation. On the same day, Madden's wife described him as "not being himself," and requested the presence of a staff member in the room with Madden at all times. However, this description did not necessitate a personal sitter, which is typically required only for psychotic and delirious patients.

During the same admission, the Hospital staff allowed Madden to sit in a wheelchair because of the difficulty he had lying in bed; the medical records indicate that Madden had to sleep sitting up. Throughout his admission, Madden reported that he was feeling fine, with a few comments about shortness of breath. However, on the evening of January 1, 2008, Madden was found unresponsive in his wheelchair.

---

1. Defined as a Body Mass Index greater than 40; Madden's was 71.1.

A Code Blue was called. In order to intubate Madden with an endotracheal tube to resuscitate him, the staff transferred Madden from the wheelchair to the floor. It took the Hospital 25 minutes to resuscitate him; Madden had suffered a cardiopulmonary arrest. On January 25, 2008, Madden was transferred to a non-VA facility for long-term care. He never regained consciousness, and died on January 8, 2010.

Madden's estate filed a wrongful death suit against the United States under the Federal Tort Claims Act. A bench trial ensued, and each party brought in a medical expert witness. Madden called Dr. Syed Husain and the United States called Dr. Mindy Schwartz. The court heard testimony from both witnesses as to the standard of care required for a patient in Madden's situation. The judge ultimately found that Dr. Schwartz was a credible witness and Dr. Husain was not. The district court specifically noted that the credentials of the medical experts had no bearing on its decision. Rather, the district court found Dr. Schwartz's opinions were supported by the medical records, relevant literature, data, and studies, and medical explanations. Conversely, the United States successfully impeached Dr. Husain, exposing his lack of consultation of relevant medical literature and even Madden's medical records themselves. Additionally, the district court detected a sense of bias from Dr. Husain, stating that it was likely due to the fact that he was a family friend and was originally approached to provide support to the family before Madden's death.

The district court found in favor of the United States. Madden's estate challenges the district court's finding that the United States' expert witness was credible while Madden's expert witness was not, as well as a litany of other factual findings made by the district court.

## II. DISCUSSION

■ On appeal, findings of fact cannot be set aside unless the lower court's ruling was clearly erroneous. Fed. R. Civ. P. 52(a)(6). The Supreme Court held that, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *See also Furry v. United States*, 712 F.3d 988 (7th Cir. 2013). If there are two plausible views of the evidence, a reviewing court cannot set aside a finding simply because it would have found differently than the trier of fact. *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ In a bench trial, a district court judge must act as both gatekeeper and fact finder. *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1068 (7th Cir. 2013). The judge must determine both the admissibility of expert evidence under Federal Rule of Evidence 702 and the credibility of the expert witness. *Id.*

■ A district court's finding of an expert witness's credibility is one of fact, and is therefore reviewed for clear error. *Id.* We give "great weight" to the district court's credibility findings "based on the demeanor of witnesses at trial." *United States v. Huebner*, 752 F.2d 1235, 1241 (7th Cir. 1985). "We will normally have no reason to disturb a court's evaluation of witness credibility unless the court has credited patently improbable testimony or its credibility assessments conflict with its other factual findings." *Gicla v. United States*, 572 F.3d 407, 414 (7th Cir 2009). "[I]n a case of dueling experts, as this one was, it is left to the trier of fact, not the reviewing court, to decide how to weigh the compet-

ing expert testimony." *Wipf v. Kowalski*, 519 F.3d 380, 385 (7th Cir. 2008).

Madden argues the trial court was biased against the plaintiff throughout the entirety of the bench trial, but specifically in finding the United States' expert witness was credible while Madden's expert witness was not credible. In so arguing, Madden claims the discrepancies in Dr. Husain's testimony the district court relied on were "de minimus matters." We disagree.

■ The district court found that Dr. Husain's testimony proved, if nothing else, his lack of knowledge and familiarity with Madden's medical records; the district court noted that on several occasions, Dr. Husain's testimony brought to light his lack of familiarity with numerous sections of Madden's medical records. The district court also noted that he provided his expert opinion based on facts not supported by the medical records, and his opinions were not supported by relevant medical literature, data, and studies. The district court also made note that he had an innate bias due to his relationship with Madden's family and his involvement with Madden's medical situation prior to Madden's death.

On the other hand, the district court found that it was clear from Dr. Schwartz's testimony that she reviewed the entirety of Madden's medical records. Her opinions were drawn from her knowledge of the medical records, coupled with research conducted to present the necessary literature, data, and studies during her testimony. The district court properly found one expert witness more reliable than the other and Madden presents no valid reason to quarrel with this determination.

Madden also challenges a litany of other factual findings regarding the standard of care provided by the Hospital. Some of these include: the Hospital's denial of a sitter upon Madden's wife's request; allowing Madden to sleep in his wheelchair; the Hospital's decision to lay Madden on the floor rather than lift him to the bed during the Code Blue; and the fact that it took the Hospital 25 minutes to intubate Madden. With no valid reason to set aside the district court's conclusion on the credibility of each expert witness, we have no reason to conclude that the court's factual findings based on their testimony were clearly erroneous.

## III. CONCLUSION

For the forgoing reasons, we AFFIRM the district court's findings.