Bauer, Circuit Judge, dissenting.
I would affirm the decision of the district court. The district court found that reasonable people could conclude that Linno Llenos' ("Llenos") cerebral hypoxia was not an intentional injury under the terms of Minnesota Life Insurance Company's *387 Accidental Death & Dismemberment policy riders ("Rider") and his death was an unexpected and unforeseen accident. Because reasonable people could conclude that his death was an accident, and ambiguities in the plan must be construed in favor of coverage, I believe that the district court properly determined that Llenos' death is covered by the Rider.
As the majority notes, the facts surrounding Llenos' death are not in dispute. During an act of manual-stimulation, Llenos engaged in self-strangulation. He hung himself by the neck and was unable to free himself before succumbing to cerebral hypoxia and ultimately death.
The district court's determination of whether the Rider's terms are ambiguous is subject to de novo review and construed in favor of the insured. Cheney v. Standard Ins. Co. , 831 F.3d 445, 450 (7th Cir. 2016). Findings of fact "must not be set aside unless clearly erroneous[.]" Fed. R. Civ. P. 52(a)(6). " '[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " Madden v. United States Dep't of Veterans Affairs , 873 F.3d 971, 973 (7th Cir. 2017) (quoting United States v. U.S. Gypsum Co. , 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948) ).
The majority focuses its analysis on two prongs: whether autoerotic asphyxiation is an injury and, if so, whether the injury was intentionally self-inflicted. It concludes that because Llenos intentionally engaged in the sexual act which led to his death, even though his death was an accident, he is not entitled to coverage under the Rider. This analysis separates the manual-stimulation from the self-strangulation and erroneously concludes that autoerotic asphyxiation is an injury.
The majority cleaves the act into two separate actions: (1) the act of masturbation, and (2) the act of self-strangulation. This confuses the analysis; it erroneously divides one global process into two distinct acts and the majority focuses solely on the strangulation aspect while ignoring the contemporaneous masturbatory act. So, the question should be: could reasonably intelligent people conclude autoerotic asphyxiation is not intentionally injurious behavior? I believe they can.
When examining whether or not autoerotic asphyxiation is an injury, our analysis in Santaella and our sister circuits' perspective on the question is illuminating. Santaella v. Metro. Life Ins. Co. , 123 F.3d 456 (7th Cir. 1997).
In Santaella , this Court adopted the Fifth Circuit's methodology for analyzing whether a death under an accidental death policy was accidental: the court must determine "(1) that the deceased had a subjective expectation of survival, and (2) that such expectation was objectively reasonable which it is if death is not substantially certain to result from the insured's conduct." Santaella , 123 F.3d at 463 (quoting Todd v. AIG Life Ins. Co. , 47 F.3d 1448, 1456 (5th Cir. 1995) ). The same analysis should be imported to the question of whether or not the act at bar-autoerotic asphyxiation-is injurious; that is to say, did the practitioner reasonably expect not to injure himself and was that expectation objectively reasonable.
In Santaella , like here, there was no factual dispute. The decedent intentionally took a mild prescription pain killer and suffered an overdose. The medical examiner ruled out natural causes, suicide, homicide, and unknown causes and concluded that the decedent's death was the result of an overdose from propoxyphene at a level less than one-third the typically lethal blood level. This Court concluded that because *388 the decedent had subjective expectation of survival and the objectively reasonably person would not think death a substantial certainty, the death was an accident.
Here, there is evidence that Llenos intended to weather the masturbatory episode unscathed. During the course of the investigation, Llenos' wife informed police that he was not suicidal, that the family's finances were secure, and she did not think he committed suicide. The report further states that there were prophylactic measures in place to mitigate the risk of injury during the act, specifically, a towel wrapped around his neck, his foot resting on a step stool, and a possible release mechanism. Lastly, the coroner found rubber rings around Llenos' genitals and noted that his "pubic hair was shaved in a semi-circular pattern consistent with prior use[.]" The record, limited thought it may be, indicated Llenos had a history of engaging in autoerotic asphyxiation and doing so without injury, leading one to the belief that the act, as it was intended to be performed, was not injurious.
Because the first prong of the analysis is satisfied, we should look to whether such expectation was objectively reasonable-that is to say injury was not substantially certain. For injury to be the substantially certain result of autoerotic asphyxiation, the objectively reasonable person would have to expect that the injury was the likely outcome from the act. See Santaella , 123 F.3d at 462 (quoting Wickman v. Nw. Nat. Ins. Co. , 908 F.2d 1077, 1088 (1st Cir. 1990) ); see also Med. Protective Co. of Fort Wayne, Indiana v. Am. Int'l Specialty Lines Ins. Co. , 911 F.3d 438, 449 (7th Cir. 2018), reh'g denied (Jan. 29, 2019) (briefly discussing substantial certainty in the known loss context as "virtually inevitable"). This objective prong was also discussed by our sister circuits.[1]
In Padfield v. AIG Life Ins. Co. , 290 F.3d 1121, 1127 (9th Cir. 2002), and Critchlow v. First UNUM Life Ins. Co. of Am. , 378 F.3d 246, 258 (2d Cir. 2004), the Ninth and Second Circuits acknowledged that asphyxiophilia and autoerotic asphyxiation are widely practiced sexual acts. If it were objectively reasonable to conclude that an injury, as commonly understood, was the likely result of autoerotic asphyxiation there would be few if any repeat practitioners. Moreover, autoerotic asphyxiation has permeated popular culture and has become a commonplace punchline. Accordingly, I believe the objective prong of the analysis is satisfied.
Because Llenos had a subjective expectation of escaping unscathed and the objectively reasonable person would not think an injury was a substantial certainty, his death should not be deemed the result of an intentional injury. Therefore, the Rider's exclusion would not apply.
The majority's position incorrectly separates the masturbation from the asphyxiation and as a result creates a rule where it will always be excluded from coverage under an accidental death & dismemberment policy that includes an intentional injury exclusion. Llenos' conduct was undoubtedly risky but was not inherently injurious. The determination that autoerotic asphyxiation is an injury ignores that fact that when done correctly it can and does have a recreational purpose with no lasting health consequences.
By contrast, in the case of the skydiver or bungee jumper whose equipment malfunctions, the injury is the sudden stop when the thrill seeker crashes back to earth, but the act-the jump-was an inten *389 tional one. But, the subjective and objective intent was to survive. Like the thrill seeker or extreme athlete who steps out of an airplane or purposefully exposes himself to outrageous conditions, the asphyxiophiliant is not necessarily acting injuriously.
The majority focuses its inquiry on the injury aspect of Llenos' self-strangulation incorrectly concluding that any amount of asphyxiation is injurious and therefore autoerotic asphyxiation must be excluded under the Rider. But, as the district court points out, "reasonable minds could differ on whether the term 'injury' as used in the [Rider] includes Llenos' induction of cerebral hypoxia under the facts of this case."
Because reasonable minds can differ about whether or not autoerotic asphyxiation would be an intentionally inflicted injury, it creates an ambiguity in coverage, and ambiguities must be resolved in favor of coverage. Minnesota Life is in the best position to remedy this ambiguity by expressly excluding coverage for such inherently dangerous activities, as other insurance providers have done. See Johnson v. Am. United Life Ins. Co. , 716 F.3d 813, 817 (4th Cir. 2013) (noting a policy exclusion for "hang-gliding, bungee jumping, automobile racing, motorcycle racing, skydiving, rock climbing, or mountain climbing."); Kovach v. Zurich Am. Ins. Co. , 587 F.3d 323, 336 (6th Cir. 2009) (noting policy exclusions for "skydiving, parasailing, hangglinding [sic], bungee-jumping, or any similar activity.").
In conclusion, I would affirm the decision of the district court. The district court properly concluded that cerebral hypoxia was not an intentional injury and Llenos' death was an unforeseen accident. Autoerotic asphyxiation is an inherently dangerous sexual practice. The matter at hand shows that even seasoned practitioners can succumb to cerebral hypoxia and die. Therefore, I respectfully DISSENT.

Like the majority, I decline to adopt the analysis in either Padfield or Critchlow because they unnecessarily parse one continuous event into distinct phases.